

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*     *(203)821-3700*
*157 Church Street, 25th Floor*     *Fax (203) 773-5376*
*New Haven, Connecticut 06510*     *www.justice.gov/usao/ct*

July 6, 2021

Bethany Phillips
Donnelly Phillips LLC
71 Raymond Road
West Hartford, CT 06107

United States District Court
District of Connecticut
FILED AT BRIDGEPORT
July 6, 2021 20___
Robin D. Tabora, Clerk
By _____
Deputy Clerk

    Re:     United States v. Ta'ron Pharr
                Case No. 3:20CR58 (KAD)

Dear Ms. Phillips:

      This letter serves as a plea agreement between your client, Ta'ron Pharr (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") to resolve the federal criminal case pending against him.

**THE PLEA AND OFFENSE**

      In consideration for the benefits offered under this agreement, Ta'ron Pharr, a.k.a. "250," agrees to plead guilty to Count One of a second superseding indictment, charging him with engaging in a pattern of racketeering activity, as a result of his membership in the Original North End or O.N.E. enterprise, in violation of Title 18, United States Code, Section 1962(c) (Count One).

      The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

COUNT ONE: ENGAGING IN A PATTERN OF RACKETEERING ACTIVITY

          1. An enterprise, as described in the Second Superseding Indictment, existed on or about the time alleged in the Second Superseding Indictment;

          2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;

    3. The defendant was employed by, or was associated with, the enterprise;

    4. The defendant knowingly conducted or participated, directly or indirectly, in the conduct of the affairs of the charged enterprise; and

    5. The defendant knowingly participated in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity; that is, through the commission of at least two racketeering acts within ten years of each other, or through causing or aiding and abetting the commission of two racketeering acts.

## **THE PENALTIES**

### Imprisonment

The maximum penalty for engaging in a pattern of racketeering activity is 20 years of imprisonment, unless the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment, in which case the maximum penalty is life imprisonment. Because the defendant has not been charged with murder as a special circumstances, the maximum penalty is 20 years of imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

The offense carries a maximum fine of $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $100. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663. The scope and effect of

the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

### Forfeiture

The parties agree that forfeiture is not applicable in this case.

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States

Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

### Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

With regard to racketeering predicate acts pursuant to Title 18, United States Code, Section 1961(1), the parties stipulate that the defendant is responsible for directly participating in predicate acts including: (a) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (b) conspiracy to commit murder, in violation of Conn. Gen. Stats. §53a-54 and §53a-48; (c) transportation of stolen vehicles, in violation of 18 U.S.C. § 2314; and (d) arson of a motor vehicle, in violation of Conn. Gen.Stats § 53a-112(a)(1)(B).

### Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

Under U.S.S.G. § 2E1.1(a)(2), each underlying act of racketeering is treated as a separate count of conviction. And these individual acts and separate counts of conviction charging RICO and drug conspiracy offenses are not groupable under U.S.S.G. § 3D1.2 and therefore require a multiple count computation under U.S.S.G. § 3D1.4.

The parties agree that five groups – two possessions with intent to distribute heroin, the conspiracy to commit murder, which resulted in the murder of Len Smith, arson of a motor vehicle, and the interstate transport of a stolen vehicle -- must be considered in determining the Guidelines. The parties agree that the two possessions with intent to distribute heroin are calculated pursuant to U.S.S.G. § 2D1.1, the conspiracy to commit murder which resulted in the murder of Len Smith is calculated pursuant to U.S.S.G. § 2A1.5(c) (Conspiracy to Commit Murder), which cross-references U.S.S.G. § 2A1.1)(First Degree Murder) because a murder did occur prior to the defendant withdrawing from the conspiracy, resulting in an offense level of 43. Finally, the interstate transport of a stolen vehicle is calculated pursuant to U.S.S.G. § 2B1.1, and the Arson of a Motor vehicle is calculated pursuant to U.S.S.G. § 2K1.4. Each of these groups, represent a different group because there are distinct victims or the guideline is specifically excluded from operation of the grouping subsection. *See* U.S.S.G. § 3D1.2 (d) (table)(Section 2B3.1 is not groupable).

For the first group, which is possession to distribute heroin on February 18, 2020, the base offense level is 19, under U.S.S.G. § 2E1.1, as the parties agree that any calculation under U.S.S.G. § 2D1.1(c)(12) would be below a level 19, and U.S.S.G. § 2E1.1 applies the greater of the two calculations.

For the second group, which is possession to distribute heroin on July 7, 2020, the base offense level is 19, under U.S.S.G. § 2E1.1, as the parties agree that any calculation under U.S.S.G. § 2D1.1(c)(12) would be below a level 19, and U.S.S.G. § 2E1.1 applies the greater of the two calculations.

For the third group, which is conspiracy to commit murder on August 9, 2018, from which the defendant does not dispute that he failed to withdraw, and which resulted in the murder of Len Smith on August 13, 2018, the base offense level under U.S.S.G. § 2A1.5 (Conspiracy or Solicitation to Commit Murder), is 33, but under U.S.S.G. § 2A1.5(c)(1), because the conspiracy resulted in the death of a victim, his advisory guideline is cross referenced to U.S.S.G. § 2A1.1,and as a result is level 43.

For the fourth group, which is the interstate transport of a stolen vehicle, the base offense level is 7, under U.S.S.G. § 2B1.1(a)(1). That offense level is increased by 4, pursuant to U.S.S.G. § 2B1.1(b)(1)(C)(loss between $15,000 and $40,000), resulting in an adjusted offense level of 11, which pursuant to U.S.S.G. § 2E1.1, becomes 19.

For the fifth group, which is the arson of a stolen vehicle, the base offense level is 20, under U.S.S.G. § 2K1.4(a)(2). That offense level is increased by 2, pursuant to U.S.S.G. § 2K1.4(b)(1)(offense was committed to conceal another offense), resulting in an adjusted offense level of 22.

Under U.S.S.G. § 3D1.4, there are a total of five groups on which the parties agree. Because groups one, two, four and five are not within nine levels of group two, no units are added pursuant to U.S.S.G. § 3D1.4(c). The result is an adjusted offense level of

43. Subtracting three levels for acceptance of responsibility, the defendant's total offense level is 40.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 40, assuming a Criminal History Category I, would result in a range of 292 to 365 months of imprisonment (sentencing table) and a fine range of $50,000 to $500,000, U.S.S.G. § 5E1.2(c)(3). Due to the maximum penalty under RICO, which is 240 months, the defendant's advisory guidelines range becomes 240 months of imprisonment. The defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2.

The Government and the defendant each reserve their rights to seek a departure or a non-Guidelines sentence (the Government if the final Guidelines are lower than what is agreed upon above), and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 240 months of imprisonment, a three-year term of supervised release, $250,000 fine, and a $100 special assessment, and restitution even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver

applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The

defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

**SCOPE OF THE AGREEMENT**

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

**COLLATERAL CONSEQUENCES**

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and may thereby be deprived of certain federal benefits as provided in 21 U.S.C. § 862 and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut for the predicate acts to which he has allocated as a result of his participation in the ONE racketeering enterprise. After sentencing, the Government will move to dismiss counts three, nine, ten, eleven and twelve of the Second Superseding Indictment, and the Superseding Indictment against the defendant because the conduct contained in those counts of the Second Superseding Indictment are covered by the defendant's guilty plea to Count One of the Second Superseding Indictment.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

**NO OTHER PROMISES**

*Bethany Phillips, Esq.*
*Page 10*

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

RAHUL KALE
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____     7/6/21
TA'RON PHARR                        Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____     7/6/21
BETHANY PHILLIPS, ESQ.              Date
Attorney for the Defendant

## STIPULATION OF OFFENSE CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to enter a guilty plea to the Second Superseding Indictment.

1. Mr. Pharr was a member of an enterprise-in-fact, known as O.N.E., or "Original North End," from January 2018 until May 2020;
2. Mr. Pharr was aware that members of O.N.E. (a) committed acts of violence against rival groups; (b) robbed drug dealers; (c) sold narcotics; (d) laundered narcotics proceeds; and (e) stole cars from inside and outside Connecticut, which they used to commit crimes;
3. Mr. Pharr agreed with fellow O.N.E. members that members of rival groups, a.k.a., the opposition or the "opps," including the East End group, the East Side group, and the PT Barnum Group, who disrespected or injured O.N.E. or their allies, the Greene Homes Boys, were to be subjected to violence;
4. On August 8, 2018, Mr. Pharr, as part of his membership in O.N.E. helped others steal a white Jeep from a location in New York State and transported it to Bridgeport, Connecticut;
5. Between August 9, 2018 and August 11, 2018, Mr. Pharr agreed with another O.N.E. associate to drive to the East End of Bridgeport in the stolen white Jeep to shoot and kill rival East End gang/group members, who he had learned through social media were at a deli on Stratford Avenue in Bridgeport. The plans fell through;.
6. On August 13, 2018, Mr. Pharr does not disagree that as a result of the conspiracy, discussed in paragraph 6 above, from which Mr. Pharr had not withdrawn, O.N.E. associates used the stolen white Jeep to drive to the East End of Bridgeport and shot and killed Len Smith under the mistaken belief that he was a rival East End gang member;
7. On August 13, 2018, the defendant, along with others, helped transport the stolen white Jeep to Shelton, Connecticut, where Mr. Pharr and other O.N.E. members burned the Jeep in an effort to destroy evidence of the murder; and
8. On February 18, 2020 and again on July 7, 2020, Mr. Pharr possessed and aided and abetted a fellow O.N.E. member's possession of heroin with the intent to distribute it.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
TA'RON PHARR
The Defendant

_____
BETHANY PHILLIPS, ESQ.
Attorney for the Defendant

_____
RAHUL KALE
ASSISTANT UNITED STATES ATTORNEY

## **RIDER CONCERNING RESTITUTION**

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663 as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614.